UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD W.,

                Plaintiff,

v.                                      CASE NO. 1:22-cv-00344 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HILLER COMERFORD INJURY & DISABILITY LAW<br>  Counsel for Plaintiff<br>6000 North Bailey Avenue<br>Suite 1A<br>Amherst, NY 14226 | IDA M. COMERFORD, ESQ.<br>KENNETH R. HILLER, ESQ.<br>JUSTIN D. JONES, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | GRAHAM MORRISON, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is DENIED, the defendant's motion for

1

judgment on the administrative record is GRANTED, and the decision of the Commissioner is AFFIRMED.

I. **RELEVANT BACKGROUND**

   A. **Factual Background**

Plaintiff was born on December 31, 1973, and has a high school education. (Tr. 40, 282). Generally, plaintiff's alleged disability consists of depression, short temper, herniated discs in the neck, head pain, degenerative disc disease in the neck and back, and right-side nerve damage. (Tr. 281). His alleged disability onset date is August 26, 2016, and the date last insured September 30, 2018. (Tr. 16).

   B. **Procedural History**

On October 17, 2019, plaintiff applied for a period of Disability Insurance Benefits (DIB) under Title II, and Supplemental Security Income (SSI) under Title XVI, of the Social Security Act. (Tr. 238-39, 243-54, 257- 63). Plaintiff's applications were denied initially and upon reconsideration. He timely requested a hearing before an Administrative Law Judge (ALJ). On July 26, 2021, plaintiff appeared telephonically before ALJ Aaron M. Morgan. (Tr. 39-67). On August 9, 2021, ALJ Moran issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 12-33). On March 9, 2022, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter plaintiff timely sought judicial review in this Court.

   C. **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through
September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since August 26, 2016, the
alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine with radiculopathy, chronic pain syndrome, obesity, major depressive disorder with insomnia, adjustment disorder with depressed mood, intermittent explosive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that he can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, and crouch but can never crawl. He can understand, remember, and carry out instructions
regarding simple and routine tasks. He can occasionally interact with coworkers but can never interact with the general public. He can make simple, work-related decisions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 31, 1973 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the
claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 26, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).
(Tr. 12-33).

## II. THE PARTIES' BRIEFINGS

### A. Plaintiff's Arguments

Plaintiff makes essentially two separate arguments in support of his motion for judgment on the pleadings. First, plaintiff argues the ALJ erred in his evaluation of the opinion from plaintiff's primary care nurse practitioner. Second, plaintiff asserts the ALJ failed to rely on any medical opinions and instead relied on his own lay interpretation of the raw medical evidence to determine the RFC. (Dkt. No.8 at 1 [Pl.'s Mem. of Law]).

### B. Defendant's Arguments

Defendant responds to each of plaintiff's arguments. First, defendant argues the ALJ properly found the nurse practitioner's assessment unpersuasive. (Dkt. No. 9 at 7 [Def.'s Mem. of Law]). Second, defendant contends the ALJ properly determined plaintiff's RFC. (*Id*. at 13).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A. Nurse Practitioner's Opinion

Plaintiff asserts the ALJ erred in his evaluation of the opinion from nurse practitioner (NP) Nowak. The Court does not agree.

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.

Because plaintiff's application for benefits was filed after that date, the new regulations apply here.

Under the revised regulations, the ALJ no longer gives specific evidentiary weight to medical opinions, but rather considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2). The ALJ is required to articulate how he considered the medical opinions and state how persuasive he finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(*citing* 20 C.F.R. § 416.920c(c)(2)). The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In his opinion, ALJ Morgan extensively summarized the relevant limitations from NP Nowak's July 2021 opinion, as well as her underlying treatment records, but ultimately found the opinion to be not persuasive. (Tr. 29-31). In making this finding, the ALJ appropriately noted that the extreme physical and mental limitations were contradicted by the mild examination findings and conservative treatment.

Upon close review, records from NP Nowak do not support the extreme limitations opined in the assessment. In March 2016, five months prior to the alleged onset date, plaintiff established care with NP Nowak complaining of chronic nerve pain and related depression, but denied any musculoskeletal, psychological or constitutional symptoms. (Tr. 402). No abnormal mental or physical examination findings were noted. (Tr. 403, 404 "general adult medical examination without abnormal findings").

Mental health counselor Stewart first treated plaintiff in January 2017. At that time, plaintiff's speech, mood, thought processes, and anxiety, memory, concentration, abstract thinking, judgment, and sleep were all unremarkable. (Tr. 427). Stewart recommended counseling to improve the plaintiff's stress response to his life challenges, but her records reflect that plaintiff showed resistance to any medication or treatment. As a result, plaintiff had no further counseling with Stewart after July 25, 2017. (Tr. 406).

On August 23, 2017, NP Nowak noted that plaintiff still reported psychiatric symptoms, however, he declined additional counseling and had discontinued his medication. (Tr. 476). During that appointment, plaintiff displayed full range of motion in the neck and an angry, guarded, irritable and labile attitude. (Tr. 477). Similarly, x-rays

indicated mild degenerative changes of the lumbar and cervical spines. (Tr. 347, 349, 511-13).

NP Nowak did not observe physical limitations until December 2018. At that time, plaintiff reported his psychiatric medication was not working and he had limited range of motion in the neck with a labored and stiff gait. (Tr. 482-83). As noted by the ALJ, plaintiff did not follow-up on the treatment recommendations by NP Nowak after that visit. (Tr. 27). The ALJ additionally noted that while plaintiff reported to NP Nowak in May 2020 that his depression had worsened during the pandemic, she observed normal mood and affect. (Tr. 27, *referring to* Tr. 492). In October 2020, plaintiff reported he was doing well with anger issues and living with a girlfriend and her teenaged daughter. Physically he was observed to have a normal gait with moderately limited range of motion in the neck (Tr. 534-35).

As reiterated by the ALJ, the modest findings by NP Nowak were in extreme contrast to the significant physical and mental limitations she noted on the questionnaire. (Tr. 30). ALJ Morgan then continued in his analysis of the opinion and identified specific discrepancies per the regulations. For instance, the ALJ explained that NP Nowak claimed plaintiff could never lift ten pounds yet her examination found full (5/5) motor strength and plaintiff also had the strength to engage in multiple fights and break one man's jaw and another man's eye socket. (Tr. 29, 361). Additionally, NP Nowak opined plaintiff could not sit, stand or walk for more than fifteen minutes at a time, but the ALJ pointed to treatment notes where NP Nowak observed plaintiff's normal to stiff gait (Tr. 361, 403, 449, 474, 483, 487, 535, 544, 581). NP Nowak claimed that plaintiff had disabling pain, however the ALJ highlighted that plaintiff only treated

with over-the-counter pain medication. (Tr. 30). NP Nowak also opined that plaintiff had severe manipulation limitations, but the ALJ countered that plaintiff had virtually no treatment regarding the hands. (Tr. 30). Clearly, the ALJ satisfied his duty to consider the consistency and supportability factors when addressing NP Nowak's opinion. (Tr. 29-30).

Plaintiff's additional arguments pertaining to the ALJ's consideration of NP Nowak are also without merit. While the ALJ accurately noted plaintiff was only on over-the-counter pain medications, it was appropriate for the ALJ to consider the use of medications in determining the severity of the impairments. ALJ Morgan duly noted that plaintiff had last been prescribed opioid pain medications in 2016, prior to the alleged onset date. (Tr. 23). Plaintiff also testified that he had no surgeries or hospitalizations for his impairments and had not done physical therapy for at least four years. (Tr. 50). Therefore, the ALJ was not mischaracterizing the evidence by describing plaintiff's treatment as conservative. (Tr. 23). While plaintiff was uninsured at periods, the ALJ addressed this fact in the decision but noting the lapse was brief. (Tr. 24-25, 527).

**B. RFC**

Next, plaintiff argues that the ALJ failed to rely on any medical opinion evidence in formulating the RFC and did not tether the RFC to an opinion. (Dkt. No. 8 at 21-22). This argument is unavailing.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The Second Circuit has recently reiterated

that the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence. *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). This court has repeatedly affirmed ALJ decisions without medical opinions. *See e.g. Jonathan S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1177, 2022 WL 44700, at *7 (W.D.N.Y. Jan. 5, 2022) ("An ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion.").

Here, the ALJ based the RFC finding on evidence of record, including plaintiff's own testimony which was within the ALJ's discretion. *See, e.g., Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (In Ramsey "the ALJ occasionally deviated from consultative examiners' recommendations to decrease Ramsey's RFC based on other evidence in the record, exemplified by the ALJ's determination that Ramsey should not interact with the public. The ALJ committed no error by determining the scope of Ramsey's RFC because that is his responsibility."); *Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-1344 EAW, 2020 WL 473618, at *5 (W.D.N.Y. 2020) (holding that "[p]laintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding by referring to [the consultative examiner's opinion] and incorporating additional restrictions based on [p]laintiff's own testimony"). In the pending matter, the ALJ diligently addressed plaintiff's treatment records, conservative treatment, the lack of diagnostic testing for radiculopathy, and plaintiff's decision to not seek more inclusive treatment, including mental health counseling. (Tr. 29). Plaintiff does not identify records the ALJ omitted, rather he seeks a reweighing of the evidence favorable to him yet fails to show that no reasonable factfinder could have weighed the evidence as did the ALJ. In such

cases, the substantial evidence standard of review contemplates deference to the ALJ's weighing of the record evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Cage v. Commr of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

**ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**.

Dated: July 9, 2024  
Rochester, New York

                      J. Gregory Wehrman  
                      HON. J. Gregory Wehrman  
                      United States Magistrate Judge